# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  INVOKANA (CANAGLIFLOZIN) PRODUCTS LIABILITY LITIGATION | MDL No. 2750<br>Master Docket No. 3:16-md-2750 |
| VALERIE WILSON and MATTHEW WILSON, her husband | JUDGE BRIAN R. MARTINOTTI<br>JUDGE LOIS H. GOODMAN |
| PLAINTIFFS,<br><br>vs. | DIRECT FILED COMPLAINT<br>PURSUANT TO CASE MANAGEMENT<br>ORDER NO. 4 |
| JANSSEN PHARMACEUTICALS, INC.; JOHNSON & JOHNSON CO.; MITSUBISHI TANABE PHARMA CORP., MITSUBISHI TANABE PHARMA HOLDINGS AMERICA, INC., MITSUBISHI TANABE PHARMA DEVELOPMENT AMERICA, INC., and TANABE RESEARCH LABORATORIES U.S.A., INC.,<br><br>DEFENDANTS. | Civil Action No.: _____ |

## COMPLAINT AND JURY DEMAND

Valerie Wilson and Matthew Wilson (hereafter, "Plaintiff or Plaintiffs"), file this Complaint pursuant to CMO No. 4, and are to be bound by the rights, protections and privileges and obligations of that CMO.  Further, in accordance with CMO No. 4, Plaintiffs hereby designate the United States District Court for the Central District of California as the place of remand as this case may have originally been filed there.

Plaintiffs, by and through their attorneys, bring the following allegations and causes of action against Janssen Pharmaceuticals, Inc.; Johnson & Johnson Co.; Mitsubishi Tanabe Pharmaceutical Corporation; Mitsubishi Tanabe Pharma Holdings America, Inc.; Mitsubishi

Tanabe Pharma Development America, Inc., and Tanabe Research Laboratories U.S.A., Inc. (hereinafter collectively "Defendants") for compensatory and punitive damages, equitable relief, and such other relief deemed just and proper arising from the injuries to Plaintiffs as a result of Valerie Wilson's injuries sustained as a direct and proximate cause of ingesting the prescription drug Invokana (also known as *Canagliflozin*).  In support of her Complaint and Jury Demand, upon information and belief, at all times hereinafter mentioned, Plaintiffs allege as follows:

## **INTRODUCTION**

1.      This is an action for damages suffered by Plaintiffs as a direct and proximate result of Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distributing, licensing, labeling, supplying, and or sale of Invokana for the treatment of Diabetes.

2.      At all times herein mentioned, Defendants, directly or through their agents or employees, designed, manufactured, marketed, advertised, promoted, licensed, supplied, and sold to distributors and retailers for resale to physicians, hospitals, medical practitioners, and the general public a defective pharmaceutical product, Invokana, for the treatment of diabetes.

3.      When advising of the safety and warning of risks of use of Invokana, Defendants negligently and/or fraudulently represented to the medical and healthcare community including Valerie Wilson's healthcare providers, the FDA, to Plaintiff, Valerie Wilson, and the public in general that Invokana had been tested and was found to be safe and/or effective for its indicated use.

4.      Defendants concealed, and continue to conceal, their knowledge of Invokana's defects and unreasonably dangerous risks from Mrs. Wilson, the FDA, other consumers, the public in general, and/or the medical community, including Mrs. Wilson's healthcare providers.

5.      Fraudulent representations were made by the Defendants with the intent of defrauding and deceiving Mrs. Wilson, the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase Invokana for use to help lower blood sugar levels in adults with diabetes mellitus type 2, all of which evinced a reckless and willful indifference to health, safety and welfare of Mrs. Wilson.

6.      Defendants negligently and improperly failed to perform sufficient tests, if any, on humans using Invokana during clinical trials, forcing Plaintiff, Valerie Wilson and her physicians, hospitals, and/or the FDA, to rely on safety information that applies to other type 2 diabetes medications, which does not entirely and/or necessarily apply to Invokana whatsoever.

7.      Defendant knew or should have known of Invokana to cause serious injuries, including but not limited to life-threatening DKA, kidney failure, and cardiovascular events such as myocardial infarction.   As a result of the defective nature of Invokana, persons who were prescribed and ingested Invokana, including Mrs. Wilson, have suffered and may continue to suffer severe and permanent personal injuries, including kidney failure and diabetic ketoacidosis.

8.      As a result of the foregoing acts and omissions, after beginning Invokana treatment, and as a direct and proximate result of the Defendants' actions and inactions, Mrs. Wilson developed and was hospitalized for diabetic ketoacidosis on April 23, Mrs. Wilson's ingestion of defective and unreasonably dangerous Invokana has caused serious injuries and damages to Plaintiffs, including but not limited to physical pain and mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

9.      Consequently, Plaintiffs bring this action against Defendants seeking compensatory damages as a proximate result of being prescribed and ingesting defective drug

Invokana, which has caused him to suffer from life-threatening DKA resulting in hospitalization, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications as well as caused Mrs. Wilson damages from emotional distress. Accordingly, Plaintiffs seek compensatory and punitive damages, monetary restitution, and all other available remedies as a result of injuries caused by his ingestion of Invokana.

## PARTIES

10. Plaintiffs, Valerie Wilson, and Matthew Wilson, are and at all times relevant hereto were, married and were both residents and citizens of Hacienda Heights, Los Angeles County, California.

11. Plaintiff, Valerie Wilson ingested Invokana in Los Angeles, California as prescribed by her physician, Dr. Gloria Ko, M.D., whose practice is located in City of Industry, California. Valerie Wilson began ingesting Invokana as directed by her physician on or about May 2013 and continued her ingestion of Invokana until approximately April 2015

12. Upon information and belief, at all times herein mentioned, Defendant Janssen Pharmaceuticals, Inc. ("Janssen") was a Pennsylvania corporation with its principle place of business at 1125 Trenton Harbourton Road, Titusville, County of Mercer, State of New Jersey. Janssen is a wholly owned subsidiary of Defendant Johnson & Johnson. Janssen is registered to do business throughout the United States, including in the state of California, where Plaintiffs reside and where Plaintiff, Valerie Wilson was treated. Upon information and belief, Defendant Janssen has derived substantial revenue from Invokana products used in the State of California. As part of its business, Janssen engaged in researching, developing, testing, designing, labeling,

4

packaging, licensing, manufacturing, distributing, supplying, marketing, advertising, and introducing prescription drug Invokana/canagliflozin for use as an oral Type 2 diabetes drug prescribed to help lower blood sugars into interstate commerce, either directly or indirectly through third parties or related entities. Defendant Janssen is the holder of the New Drug Application ("NDA") for Invokana. Upon information and belief, Defendant Janssen expected or should have expected its acts to have consequences within the United States of America, the State of California, and derived substantial revenue from interstate commerce within the United States and the State of California, more particularly.

13.     Upon information and belief, at all times herein mentioned, Defendant Johnson & Johnson Co. ("Johnson & Johnson") was a New Jersey corporation with its principle place of business at One Johnson & Johnson Plaza, New Brunswick, County of Middlesex, state of New Jersey. Johnson & Johnson is registered to do business throughout the United States, including in the state of California where Plaintiffs reside and where Plaintiff, Valerie Wilson was treated. Upon information and belief, Defendant Johnson & Johnson has derived substantial revenue from Invokana products used in the State of California. Johnson & Johnson engaged in researching, developing, testing, designing, labeling, packaging, licensing, manufacturing, distributing, supplying, marketing, advertising, and introducing prescription drug Invokana/canagliflozin for use as an oral Type 2 diabetes drug prescribed to help lower blood sugars into interstate commerce, either directly or indirectly through third parties or related entities.

14.     Defendant Mitsubishi Tanabe Pharma Corp. ("Tanabe") is a Japanese corporation with its principle place of business at 3-2-10, Dosho-machi, Chuo-ku, Osaka 541-8505, Japan. Tanabe engaged in researching, developing, testing, designing, labeling, packaging, licensing,

manufacturing, distributing, supplying, marketing, advertising, and introducing prescription drug Invokana/canagliflozin for use as an oral Type 2 diabetes drug prescribed to help lower blood sugars into interstate commerce, either directly or indirectly through third parties or related entities.

15.    Defendant Mitsubishi Tanabe Pharma Holdings America, Inc. (Tanabe Holdings) is a Delaware corporation with a principal place of business at 525 Washington Boulevard, Suite 400, Jersey City, New Jersey 07310.  Upon information and belief, Tanabe Holdings is a subsidiary of Tanabe and a holding company for U.S. subsidiaries and involved in transacting business involving Invokana.

16.    Defendant Mitsubishi Tanabe Pharma Development America, Inc. (Tanabe Development) is a Delaware corporation, with a principal place of business at 525 Washington Boulevard, Suite 400, Jersey City, New Jersey 07310.  Upon information and belief, Tanabe Development license pharmaceuticals and drug therapies including Invokana for its parent corporation, Tanabe and conducts clinical development activity for obtaining marketing approval of drugs in the U.S., including Invokana, and provides administrative support for U.S. affiliates.

17.    Defendant Tanabe Research Laboratories U.S.A., Inc. (Tanabe Research) is a California corporation with a principal place of business of 4540 Towne Centre Court, San Diego, California 92121.  Upon information and belief, Tanabe Research conducts pharmaceutical research, including that relating to Invokana.

18.    Defendants Tanabe, Tanabe Holdings, Tanabe Development and Tanabe Research, in collaboration with other Defendants designed, developed, underwrote, manufactured, marketed, and commercialized Invokana for the use by patients with diabetes, including Plaintiff.

19.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives, and any and all other persons acting on their behalf.

20.     Upon information and belief, Defendants expected or should have expected their acts to have consequences within the United States of America, the State of California, and derived substantial revenue from interstate commerce within the United States and the State of California, more particularly.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between the parties as Plaintiffs are citizens of a state different from where Defendants are incorporated and have their principal places of business, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

22.     Venue is proper within this District because it is a judicial district where Defendants are subject to personal jurisdiction in accordance with 28 U.S.C. § 1391(c), and are subject to Multi-District Litigation proceedings within this District as part of MDL No. 2750 as directed by this Court's CMO No. 4.

23.     At all times relevant to this action, Defendants engaged, either directly or indirectly, in the business of marketing, promoting, distributing, and selling prescription drug products, including Invokana, within the state of California, with a reasonable expectation that Invokana products would be used or consumed in this state, and thus regularly solicited or transacted business in this state.

24.     At all times relevant to this action, Defendants were engaged in substantial business activities in the state of California, including disseminating inaccurate, false, and misleading information about Invokana to health care professionals in California with a reasonable expectation that such information would be used and relied upon by health care professionals throughout California and throughout the United States.

25.     At all relevant times, Defendants transacted, solicited, and conducted business in the state of California through their employees, agents, and/or sales representatives and derived substantial revenue from such business in the state of California.

26.     Further, Defendants committed torts in whole or in part against Plaintiffs in the State of California. As such, this Court has personal jurisdiction over all named Defendants due to the MDL No. 2750 being set in the District Court of New Jersey and a Direct Filing Order being in place.

## FACTUAL BACKGROUND

27.     At all relevant times, Defendants were in business of and engaged in designing, researching, manufacturing, testing, advertising, promoting, marketing, selling and distributing Invokana and canagliflozin for use as a type of prescription medication prescribed to help lower blood sugar levels in adults with diabetes mellitus type 2.

28.     Invokana is an antidiabetic drug and a member of the gliflozin class of pharmaceuticals, also known as sodium-glucose co-transporter 2 ("SGLT2") inhibitors.

29.     SGLT-2 is a protein in humans that facilitates glucose reabsorption in the kidneys. SGLT-2 inhibitors reduce blood sugar levels by reducing glucose reabsorption through the user's kidneys and increasing glucose excretion through the user's urine.

30.     Defendants submitted their New Drug Application to the FDA for approval to market Invokana in the United States on May 31, 2012 and received received final FDA approval on March 29, 2013 in oral tablet doses of 100 mg and 300 mg. Invokana's indications for use statement was "[a]s an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus."

31.     Even though Invokana was not approved until nearly three months into the year, Defendant spent $12 million on advertising for Invokana between January and October 2013, the most money spent marketing any pharmaceutical drug in the United States during that time period.  Invokana is one of Defendants' top selling drugs, with annual sales exceeding $1 billion.

32.     In an effort to increase their market share and distinguish Invokana from other type 2 diabetes drugs, Defendant marketed (and continue to market) Invokana off label for weight loss.

33.     Defendant extensively marketed Invokana off label as a weight loss drug to the public and healthcare providers. For example, in the clinical research results section on their website specifically directed to healthcare providers, Defendant included a prominent tab titled "Body Weight Change." The first statement on the tab said, "Invokana® monotherapy demonstrated statistically significant reductions in body weight vs. placebo at 26 weeks." Then there is a graph claiming a 2.2% increase in weight loss for those on 100 mg doses (a mean of 5.5 pounds) and a 3.3% increase in weight loss for those on 300 mg doses (a mean of 7.5 pounds).

34.     On Defendants' websites directed to consumers, in a large chart promoting the alleged benefits of Invokana, Defendants claim, "Although Invokana® is not for weight loss, it

may help you lose weight."[1]  Again on Defendant Frequently Asked Questions website directed to consumers, the following question is posed: "If INVOKANA® helps my body get rid of some sugar, can it also help me lose weight?" The answer Defendants provide states, "Although INVOKANA® is not a weight-loss medicine, and each person is different, people can experience reduction in weight."[2]

35.    Defendants also, through their marketing materials, misrepresented and exaggerated the effectiveness of Invokana, both as to its ability to lower glucose, and its benefit for non- surrogate measures of health, such as reducing adverse cardiovascular outcomes.

36.    Defendants' marketing campaign willfully and intentionally misrepresented the risks of Invokana and failed to warn about the risks of diabetic ketoacidosis, kidney failure, and cardiovascular injury.

37.    Defendants' misrepresentations and off-label advertising campaigns have led to Invokana being prescribed for off-label uses, in people with type 1 diabetes, for weight loss, and reduced blood pressure.

38.    Defendants also provide a checklist of questions for a new patient to ask their doctor about Invokana. Many of the questions relate to steering the conversation towards the patient's weight. Questions a prospective patient is supposed to ask their doctor include:

    a.    Should I consider losing weight? If so, how much?

    b.    How will INVOKANA® (canagliflozin) impact my weight?

    c.    What are the most important lifestyle changes I can make to help improve my numbers?

    d.    What type of exercise is best for me? Are there any forms of exercise I should avoid?

---

[1] https://www.invokana.com/about-invokana/what-is-invokana
[2] https://www.invokana.com/about-invokana/faq

e.    How is INVOKANA® different from other types of medications I'm taking/have tried?

39.    On information and belief, Defendant intend for healthcare providers and the public to see the alleged added benefit of weight loss and choose Invokana over other type 2 diabetes drugs, when in fact these alleged weight loss benefits are one of the catalysts to the serious injuries alleged herein.

40.    As a result of their heavy marketing of Invokana, Defendants turned a new drug with zero market share in March 2013 into a drug that did $278 million in sales in the first quarter of 2015. Invokana's sales nearly tripled from the first quarter of 2014, when the $94 million in sales from the first quarter of 2014, and is nearly 40% more than Invokana's sales from the previous quarter of 2014 which totaled $201 million.

41.    Indeed, Defendants have published advertisements on their company websites and issued press releases announcing favorable information about Invokana. For example, the FDA's approval of Invokana on March 29, 2013 was announced on the Johnson & Johnson web site. On April 1, 2013, Tanabe announced the approval of Invokana in the United States as a new treatment option for Type 2 diabetes. On March 14, 2016, the Johnson & Johnson issued a press release announcing "First Real- World Evidence Comparing an SGLT2 Inhibitor with DPP-4 Inhibitors Shows Adults with Type 2 Diabetes Achieve Greater Blood Glucose Control with INVOKANA® (canagliflozin)." The former announcements did not contain warnings about ketoacidosis, serious infections, etc., while the latter announcement mentioned these conditions.

42.    Not only is Defendants' marketing misleading in that it overstates Invokana's efficacy while downplaying the serious adverse events, Defendants should have and would have discovered the risk of serious injuries including diabetic ketoacidosis, kidney failure, and

cardiovascular events such as myocardial infarctions through studies prior to Invokana's approval. Along with the above described serious injuries, in less than two years after Invokana's approval multiple pieces of medical literature have linked SGLT-2 inhibitors with increased ketone production, including:

    a. Kohei Kaku et al., *Efficacy and safety of monotherapy with the novel sodium/glucose cotransporter-2 inhibitor tofogliflozin in Japanese patients with type 2 diabetes mellitus: a combined Phase 2 and 3 randomized, placebo-controlled, double-blind, parallel-group comparative study*, 13 CARDIOVASCULAR DIABETOLOGY (2014);

    b. Sunder Mudaliar et al., *Changes in Insulin Sensitivity and Insulin Secretion with the Sodium Glucose Cotransporter 2 Inhibitor Dapagliflozin*, 16 DIABETES TECHNOLOGY & THERAPEUTICS 137–144 (2014); and

    c. Yutaka Seino, *Luseogliflozin for the treatment of type 2 diabetes*, 15 EXPERTOPINIONONPHARMACOTHERAPY2741–2749 (2014).

43.    Increased ketone production can lead to a serious and potentially deadly disease called diabetic ketoacidosis, or DKA.

44.    DKA is a type of acidosis that typically occurs when insulin levels are inadequate to meet the body's basic metabolic requirements. Insulin deficiency leads to formation of free fatty acids due to breakdown of triglycerides and amino acids, which get converted to highly acidic ketone bodies, leading to acidosis. Physical symptoms include nausea, vomiting, and abdominal pain that can progress to cerebral edema, coma, and death. DKA most commonly occurs in patients with type 1 diabetes and is almost always accompanied by high blood sugar levels.

45.    After approval of Invokana, FDA received multiple adverse event reports linking Invokana with DKA. In fact, FDA received 20 adverse event reports of ketoacidosis in patients

treated with SGLT-2 inhibitors from March 2013 to June 6, 2014, and FDA continued to receive additional adverse event reports after June 2014.

46.    As a result of the adverse event reports linking Invokana with DKA, and little more than two years after Invokana's approval, on May 15, 2015 FDA issued a safety communication to the public and the medical community that identified SGLT-2 inhibitors as a cause of DKA. This safety communication put particular emphasis on Invokana.

47.    On September 10, 2015, the FDA announced that Invokana causes premature bone loss and fractures.

48.    On October 16, 2015, Health Canada, the Canadian drug regulatory authority, announced that Invokana can cause acute kidney injury.

49.    Prior to the FDA's December 4, 2015 safety announcement, Invokana's label continued to fail to warn consumers, including Plaintiffs, of the serious risk of developing diabetic ketoacidosis.

50.    Defendants knew or should have known of Invokana's potential to cause DKA. Case reports from Invokana's own clinical trials showed the link between Invokana and elevated ketones. At least 4 cases of ketoacidosis or heightened ketones were present in Defendant's submissions to the FDA. Because of how rare an event DKA is in patients with type 2 diabetes, a reasonable and prudent manufacturer would have investigated the causal link in these case reports.

51.    To the contrary, Defendants conducted nationwide sales and marketing campaigns to promote the sale of Invokana and willfully deceived Plaintiffs, Plaintiffs's physicians, the medical community and the general public as to the health risks and consequences of using Invokana.

13

52. As a result of the adverse event reports submitted to FDA and FDA's ongoing investigation into the safety and efficacy of Invokana and other drugs in the SGLT2 class, on December 4, 2015, FDA required the manufacturers of Invokana and other SGLT2 inhibitors to add DKA warnings to their labels.

53. As a result of continued receipt of adverse event reports related to acute kidney injuries, on June 17, 2016 FDA added a warning to the labels for Invokana about the potential for Invokana to cause acute kidney injury. FDA stated that from March 2013 to October 2015, FDA received reports of 101 confirmable cases of acute kidney injury related to Invokana usage. The FDA further said, "This number includes only reports submitted to FDA, so there are likely additional cases about which we are unaware."

54. Despite Defendants' knowledge of the risks of cardiovascular and ketoacidosis injuries as described above, Invokana's label failed to contain a warning for either event, until the FDA mandated a warning be added in December 2015. The label still does not warn of cardiovascular risks.

55. Further, IMSP identified 457 domestic serious adverse events with canagliflozin as the primary suspect drug for the 12 months ending with March 31, 2014. IMSP states this was a higher total than for 92% of the drugs they regularly monitor.

56. Defendants admitted they knew of these adverse events and the likelihood that Invokana would cause them. When provided an opportunity to respond to the data IMSP had collected, Janssen told IMSP that "**the specific adverse effects we observed in post marketing reports were generally consistent with those seen in clinical trials**."

57. At all times relevant to this action, The Invokana Medication Guide, prepared and distributed by Defendants and intended for U.S. patients to whom Invokana has been prescribed,

failed to warn and disclose to patients that Invokana may cause DKA, kidney failure, or cardiac events such as myocardial infarctions.

58.    At all times relevant to this action, Defendants' labeling and prescribing information for Invokana:

a.    failed to investigate, research, study and define, fully and adequately, the safety profile of Invokana;

b.    failed to provide adequate warnings about the true safety risks associated with the use of Invokana;

c.    failed to provide adequate warning regarding increased risk of developing DKA by a patient taking Invokana;

d.    failed to provide adequate warning regarding the increased risk of acute renal failure due to volume depletion by a patient taking Invokana;

e.    failed to provide adequate warning regarding the increased risk of cardiovascular events such as myocardial infarctions due to volume depletion by a patient taking Invokana;

f.    failed to advise prescribing physicians, including Mrs. Wilson's physician, to instruct patients that DKA can occur without elevated blood sugars, called euglycemic diabetic ketoacidosis; and,

g.    failed to provide adequate warnings regarding the need to assess renal functioning prior to starting a patient on Invokana and to continue testing and monitoring of renal functioning periodically while the patient is on Invokana.

59.    Prior to applying for and obtaining approval of Invokana, Defendants knew or should have known that consumption of Invokana was associated with and/or would cause the induction of life-threatening DKA, kidney failure, and cardiovascular events such as myocardial infarctions.

60.    Upon information and belief, despite life-threatening DKA, renal failure, and cardiovascular event findings in a clinical trial and other clinical evidence, Defendants failed to

15

adequately conduct complete and proper testing of Invokana prior to filing their New Drug Application for Invokana.

61.    Upon information and belief, from the date Defendants received FDA approval to market Invokana, Defendants made, distributed, marketed, and sold Invokana without adequate warning to Mrs. Wilson or her prescribing physicians or Plaintiffs that Invokana was associated with and/or could cause life-threatening DKA, kidney failure, and/or cardiovascular events, including myocardial infarctions, presented a risk of life-threatening DKA, kidney failure, and/or cardiovascular events, including myocardial infarctions in patients who used it, and that Defendants had not adequately conducted complete and proper testing and studies of Invokana with regard to severe side effects, specifically life-threatening DKA, kidney failure, and/or cardiovascular events, including myocardial infarctions.

62.    Upon information and belief, Defendants concealed and failed to completely disclose its knowledge that Invokana was associated with or could cause life-threatening DKA, kidney failure, and/or cardiovascular events, including myocardial infarctions as well as its knowledge that it had failed to fully test or study said risk.

63.    Upon information and belief, Defendants ignored the association between the use of Invokana and the risk of developing life-threatening DKA, kidney failure, and/or cardiovascular events, including myocardial infarctions.

64.    Defendants' failure to disclose information that it possessed regarding the failure to adequately test and study Invokana for life-threatening DKA, kidney failure, and/or cardiovascular events, including myocardial infarctions risk further rendered warnings for this medication inadequate.

65.     In an effort to increase sales and market share, Defendants have aggressively marketed and continue to aggressively market Invokana to doctors and directly to patients for off-label purposes, including, but not limited to weight loss, reduced blood pressure, kidney benefits, cardiovascular benefits, and for use in type 1 diabetics.

66.     At all times herein mentioned, Defendants were authorized to do business within California.

67.     At all times herein mentioned, the officers and directors of Defendants participated in, authorized, and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiffs herein.

68.     Defendants, both individually and in concert with one another, misrepresented that Invokana is a safe and effective treatment for type 2 diabetes mellitus when in fact the drug causes serious medical problems which require hospitalization and can lead to life threatening complications, including but not limited to diabetic ketoacidosis and its sequelae, kidney failure and its sequelae, as well as serious cardiovascular problems.

69.     Specifically, Defendants knew or should have known of the risks of diabetic ketoacidosis and kidney failure based on the data available to them or that could have been generated by them, including, but not limited to animal studies, mechanisms of action, pharmacodynamics, pharmacokinetics, pre-clinical studies, clinical studies, animal models, genetic models, analogous compounds, analogous conditions, adverse event reports, case reports, post-marketing reports, and regulatory authority investigations, including, but not limited to the following:

17

a.   Invokana selectivity for the SGLT1 receptor;

b.   Animal studies demonstrating increased ketones when given Invokana;

c.   Studies of phlorizin indicating a propensity to cause ketoacidosis;

d.   Reports involving people with familial glycosuria, indicating a propensity to develop ketoacidosis;

e.   Clinical studies demonstrating increases in glucagon in people taking Invokana;

f.   Clinical studies, adverse event reports, and case reports demonstrating increased ketones in people taking Invokana;

g.   Clinical studies, adverse event reports, and case reports demonstrating dehydration and volume depletion in people taking Invokana;

h.   Clinical studies, adverse event reports, and case reports demonstrating vomitingin people taking Invokana;

i.   Clinical studies, adverse event reports, and case reports demonstrating re-challenge responses in increasing ketones and diabetic ketoacidosis in people taking Invokana; and

j.   Adverse event report analysis demonstrating an increased rate of reports for ketoacidosis in people taking Invokana compared to other glucose-lowering medications.

70.   Diabetic ketoacidosis may lead to complications such as cerebral edema, pulmonary edema, cerebrovascular accident, myocardial infarction, nonspecific myocardial injury, severe dehydration, and coma.

71.   Invokana-induced diabetic ketoacidosis may lead to delayed treatment because in many cases Invokana will keep blood sugar below 250 mg/dl, a threshold often used when diagnosing diabetic ketoacidosis. This may result in increased progression of the condition and increased injury to the patient.

72.   Defendants were aware that the mechanism of action for Invokana places extraordinary strain on the kidneys and renal system.

73.     Despite its knowledge of data indicating that Invokana use is causally related to the development of diabetic ketoacidosis and kidney failure, Defendants promoted and marketed Invokana as safe and effective for persons such as Plaintiffs throughout the United States, including California.

74.     Despite Defendants' knowledge of the increased risk of severe injury among Invokana users, Defendants did not warn patients but instead continued to defend Invokana, mislead physicians and the public, and minimized unfavorable findings.

75.     Defendants failed to adequately warn consumers and physicians about the risks associated with Invokana and the monitoring required to ensure their patients' safety.

76.     Despite Defendants' knowledge of the increased risk of severe injury among Invokana users, Defendants did not conduct the necessary additional studies to properly evaluate these risks prior to marketing the drug to the general public.

77.     Consumers of Invokana, including Plaintiffs, and their physicians relied on the Defendants' false representations and were misled as to the drug's safety, and as a result have suffered injuries including diabetic ketoacidosis, kidney failure, cardiovascular problems, and the life-threatening complications thereof.

78.     As a direct result of Defendants' false representations as to the safety of Invokana, Plaintiffs, Valerie Wilson, was prescribed, purchased, and began ingesting Invokana to treat Diabetes.

79.     Plaintiffs Valerie Wilson ingested and used Invokana as prescribed and in a foreseeable manner.

80.     The Invokana used by Plaintiffs Valerie Wilson was provided to her in a condition substantially the same as the condition in which it was manufactured and sold.

81.     Plaintiffs Valerie Wilson relied on claims made by Defendants that Invokana was safe and effective for the treatment of her Diabetes.

82.     As a result of ingesting Invokana, and as a direct and proximate result thereof, Plaintiffs, Valerie Wilson suffered economic and personal injuries, including diabetic ketoacidosis and related sequela, which developed and occurred in Los Angeles County, California.

83.     The development of Plaintiff's injuries was preventable and resulted directly from Defendants' failure and refusal to conduct proper safety studies, failure to properly assess and publicize alarming safety signals, suppression of information revealing serious and life-threatening risks, willful and wanton failure to provide adequate instructions, and willful misrepresentations concerning the nature and safety of Invokana.

84.     Consumers, including Plaintiffs, have several alternatives safer methods for treating diabetes, including diet and exercise and other antidiabetic agents.

**PARTY PLAINTIFFS**

85.     Mrs. Wilson was making use of the aforementioned Invokana during this time in a manner which the Defendants knew and intended to be used and/or in a manner foreseeable by the Defendants.

86.     While taking Invokana as prescribed by her physician, Mrs. Wilson was diagnosed with diabetic ketoacidosis ("DKA") on or about April 23, 2015 as a result of her ingestion of Invokana.   As a result of her injury caused by Invokana, Mrs. Wilson was hospitalized and in ICU for at least 10 days at Whittier Hospital Medical Center in Whittier, California.

87.    That upon information and belief, the drug Invokana in question was defective in that, among other things, it was made of improper and defective material; it was improperly designed; it was improperly manufactured; it failed to have adequate and proper warnings or instructions; it was not safe to be used for the purposes intended; it was inherently and/or unreasonably dangerous; it will cause severe injuries while being used and the product was otherwise defective.

88.    That in April2015, while Plaintiffs Valerie Wilson was caused to sustain those bodily injuries through no fault or carelessness of her own, but due wholly and solely to the acts and/or omissions which constituted the negligence of the Defendants, their agents, servants, employees and/or licensees in improperly and negligently manufacturing, designing, producing, distributing and maintaining said product for use by physicians and the general public; and in otherwise being carless and negligent.

89.    As a result of his development of diabetic ketoacidosis, Plaintiff developed serious complications which required multiple days of hospitalization.

90.    Plaintiff has endured pain and suffering, emotional distress, loss of enjoyment of life, and economic loss, including significant expenses for medical care and treatment which will continue in the future. Plaintiff seeks actual, compensatory, and punitive damages from Defendants.

91.    Defendants' wrongful acts, omissions, and fraudulent misrepresentations caused Plaintiff's injuries and damages.

92.    Defendants, both individually and in concert with one another, misrepresented that Invokana is a safe and effective treatment for type 2 diabetes mellitus when in fact the drug causes serious medical problems which require hospitalization and can lead to life threatening

complications, including but not limited to diabetic ketoacidosis and its sequelae, kidney failure and its sequelae, as well as serious cardiovascular problems.

93.    Mrs. Wilson's injuries were preventable and resulted directly from Defendants' failure and refusal to conduct proper safety studies, failure to properly assess and publicize alarming safety signals, suppression of information revealing serious and life-threatening risks, willful and wanton failure to provide adequate instructions, and willful misrepresentations concerning the nature and safety of Invokana. This conduct and the product defects complained of were substantial factors in bringing about and exacerbating Mrs. Wilson's injuries.

94.    Defendants, through their affirmative misrepresentations and omissions, actively concealed from Mrs. Wilson and her physicians the true and significant risks associated with taking Invokana.

95.    Defendants had a duty to warn Mrs. Wilson's prescribing physicians about the risks of Invokana use, including the risk of diabetic ketoacidosis and resulting complications.

96.    Had Mrs. Wilson  and her physicians known the true risks associated with the use of Invokana, Mrs. Wilson  would not have been prescribed Invokana, and Mrs. Wilson would not have taken Invokana or Mrs. Wilson  would have been adequately monitored for its side effects, and as a result, would not have suffered injuries and damages from using Invokana.

97.    Mrs. Wilson's prescribing and treating physicians relied on claims made by Defendants that Invokana has been clinically shown to improve glycemic control and was generally safe and effective. These claims reached Mrs. Wilson's prescribing and treating physicians directly, through print and television advertising, articles and study reports funded and promoted by Defendants, and indirectly, through other healthcare providers and others who have been exposed to Defendants' claims through its comprehensive marketing campaigns.

98.    Mrs. Wilson  relied on claims made by Defendants that Invokana has been clinically shown to improve glycemic control and was generally safe and effective. These claims reached Mrs. Wilson  directly, through print and television advertising, and indirectly, through Mrs. Wilson's  healthcare providers and others who have been exposed to Defendants' claims through their comprehensive marketing campaigns.

99.    Based on Defendants' direct-to-consumer advertising and Defendants' misrepresentations and omissions, Mrs. Wilson  made an independent decision to use Invokana based on the overall benefits and risks communicated by Defendants.

100.    Mrs. Wilson 's injuries were a reasonably foreseeable consequence of Defendants' conduct and Invokana's defects, and were not reasonably foreseeable to Mrs. Wilson  or Mrs. Wilson 's physicians.

101.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Mrs. Wilson suffered an injury of diabetic ketoacidosis. In addition, Mrs. Wilson requires and will continue to require healthcare and services. Mrs. Wilson has incurred and will continue to incur medical and related expenses. Mrs. Wilson also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Mrs. Wilson's direct medical losses and costs include physician care, monitoring, and treatment. Mrs. Wilson has incurred and will continue to incur mental and physical pain and suffering.

102.    Plaintiffs file this lawsuit within the applicable limitations period of first suspecting that Invokana caused the appreciable harm sustained by Mrs. Wilson. Plaintiffs could not, by the exercise of reasonable diligence, have discovered the wrongful cause of Mrs.

Wilson's injuries as his cause was unknown to him. Plaintiff did not suspect, nor did Plaintiffs have reason to suspect, that he had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action. Additionally, Plaintiffs were prevented from discovering this information sooner because Defendants misrepresented and continue to misrepresent to the public and to the medical profession that the drug Invokana is safe and free from serious side effects, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

103.    As part of their marketing of Invokana, Defendant widely disseminated direct-to consumer advertising campaigns that were designed to influence patients, including Mrs. Wilson, to make inquiries to their prescribing physician about Invokana and/or request prescriptions for Invokana.

104.    By reason of the foregoing acts and omissions, Mrs. Wilson was caused to suffer from life-threatening DKA, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

105.    Mrs. Wilson has endured and continues to suffer the mental anguish and psychological trauma of living with the knowledge that Mrs. Wilson has suffered serious and dangerous side effects including, inter alia life-threatening DKA, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, and monitoring and/or medications.

106.    By reason of the foregoing, Mrs. Wilson has been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to Mrs. Wilson's use of Defendants' drug, Invokana.

107.    Mrs. Wilson did not suspect, nor did Mrs. Wilson have reason to suspect, that wrongdoing had caused the injuries described herein, nor did Mrs. Wilson  have reason to suspect the tortious nature of the conduct causing the injuries, until recently. Plaintiffs have filed the herein action within the applicable statute of limitations period. Plaintiff had no knowledge of the defects in the Invokana and the wrongful conduct of Defendants as set forth herein, nor did Plaintiff have access to the information regarding other injuries and complaints in the possession of Defendants. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants herein misrepresented and continue to misrepresent to the public, to the medical profession and to Mrs. Wilson that Invokana is safe and free from serious defects and side effects, and Defendants fraudulently concealed facts and information that could have led Mrs. Wilson  to an earlier discovery of potential causes of action. As a result, equitable tolling is appropriate in this matter.

## CLAIMS FOR RELIEF

## COUNT I
## STRICT PRODUCT LIABILITY

108.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

109.    At the time of Mrs. Wilson's injuries, Defendants' Invokana was defective and unreasonably dangerous to foreseeable consumers, including Defendants' Invokana ingested by

him was in the same or substantially similar condition as when it left the possession of Defendants.

110.    At all times herein mentioned, Invokana was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendants.

111.    Defendants knew, or should have known that at all times herein mentioned, their Invokana was in a defective condition, and was and is inherently dangerous and unsafe.

112.    Mrs. Wilson did not misuse or materially alter the Invokana ingested by her.

113.    At all times herein mentioned, Invokana was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

114.    Defendants are strictly liable for Mrs. Wilson's injuries in the following ways:

   a. Defendants failed to properly market, distribute, supply, and sell Invokana;

   b. Defendants failed to warn and place adequate warnings and instructions on the Invokana products;

   c. Defendants failed to adequately test Invokana; and,

   d. Defendants failed to provide timely and adequate post-marketing warnings and instructions after it knew of the risk of injury associated with the use of Invokana.

115.    Mrs. Wilson could not, by the exercise of reasonable care, have discovered Invokana's defects herein mentioned and perceived its danger.

116.    Defendants' actions and omissions were the direct and proximate cause of Mrs. Wilson's injuries and Plaintiffs' damages.

117.    The Invokana designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions as Defendants knew or should have known that the product created a risk of serious and dangerous life-threatening side effects as described above, as well as other severe and personal injuries which are permanent and lasting in nature. Defendants failed to adequately warn of said risk.

118.    Defendants' conduct, as described herein, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Mrs. Wilson, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to re-label, warn, or inform the unsuspecting consuming public. Defendants' outrageous conduct which was wanton and willful.

119.    As a result of the foregoing acts and omissions, Mrs. Wilson was caused to suffer serious and dangerous life-threatening side effects as described above, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, and monitoring and/or medications.

120.    As a result of the foregoing acts and omissions Mrs. Wilson requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Mrs. Wilson is informed and believes and further alleges that Mrs. Wilson will in the future be required to obtain further medical and/or hospital care, attention, and services.

**WHEREFORE**, Plaintiffs demands judgment against Defendants for compensatory and statutory damages in an amount in excess of $75,000, together with interest, costs of suit,

attorneys' fees and all such other relief as the court deems appropriate pursuant to the common law and statutory law.

## COUNT II
## STRICT PRODUCT LIABILITY – FAILURE TO WARN

121.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

122.    Defendants have engaged in the business of designing, developing, researching, testing, licensing, manufacturing, packaging, labeling, promoting, marketing, selling, and/or distributing Invokana. Through that conduct, Defendants knowingly and intentionally placed Invokana into the stream of commerce with full knowledge that it would reach consumers, such as Plaintiff, who ingested the drug.

123.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released Invokana into the stream of commerce. In the course of same, Defendants directly advertised, marketed, and promoted Invokana to health care professionals, Plaintiff, and other consumers, and therefore had a duty to warn of the risks associated with the use of Invokana.

124.    Defendants expected Invokana to reach, and it did in fact reach, prescribing health care professionals and consumers, including Plaintiff and Plaintiff's prescribing health care professionals, without any substantial change in the condition of the product from when it was initially distributed by the Defendants.

125.    Invokana, as supplied by Defendants, was defective due to inadequate warnings or instructions. Defendants knew or should have known that the product created significant risks

of serious bodily harm to consumers, as alleged herein, and they failed to adequately warn consumers and/or their health care professionals of such risks.

126.   Invokana was defective and unsafe such that it was unreasonably dangerous when it left Defendants' possession and/or control, was distributed by the defendants, and when ingested by Plaintiff. Invokana contained warnings insufficient to alert consumers, including Plaintiff, to the dangerous risks and reactions associated with Invokana, including the development of Plaintiff's injuries.

127.   This defect caused serious injury to Plaintiff, who used Invokana for its intended purpose and in a reasonably anticipated manner.

128.   At all times herein mentioned, Defendants had a duty to properly inspect, package, label, market, promote, sell, distribute, supply, warn, and take such other steps as are necessary to ensure Invokana did not cause users to suffer from unreasonable and dangerous risks.

129.   Defendants negligently and recklessly marketed, labeled, distributed, and promoted Invokana.

130.   Defendants had a continuing duty to warn Plaintiff of the dangers associated with Invokana.

131.   Defendants, as sellers or distributors of prescription drugs, are held to the knowledge of an expert in the field.

132.   Plaintiffs could not have discovered any defects in Invokana through the exercise of reasonable care, and instead, Plaintiffs relied upon the skill, superior knowledge, and judgment of Defendants. Defendants were aware of the probable consequences of the aforesaid conduct. Despite the facts that the defendants knew or should have known that Invokana caused

serious injuries, they failed to exercise reasonable care to warn of the severity of the dangerous risks associated with its use. The dangerous propensities of Invokana, as referenced above, were known to Defendants, or scientifically knowable to them, through appropriate research and testing by known methods, at the time they marketed, distributed, supplied, or sold the product. Such information was not known to ordinary physicians who would be expected to prescribe the drug for their patients.

133.    Invokana, as supplied by Defendants, respectively, was unreasonably dangerous when used by consumers, including Plaintiff, in a reasonably and intended manner without knowledge of this risk of serious bodily harm.

134.    Each of the defendants knew or should have known that the limited warnings disseminated with Invokana were inadequate, but they failed to communicate adequate information on the dangers and safe use of their product, taking into account the characteristics of and the ordinary knowledge common to physicians who would be expected to prescribe the drugs. In particular, Defendant failed to communicate warnings and instructions to doctors that were appropriate and adequate to render their products safe for ordinary, intended, and reasonably foreseeable uses, including the common, foreseeable, and intended use of the products for treatment of diabetes.

135.    Defendants communicated information to health care professionals that failed to contain relevant warnings, hazards, contraindications, efficacy, side effects, and precautions, that would enable health care professionals to prescribe Invokana safely for use by patients for the purposes for which it is intended. In particular, the Defendants:

   a.    disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of Invokana;

30

b.      continued to aggressively promote Invokana even after Defendants knew or should have known of the unreasonable risks from use;

c.      failed to accompany their product with proper or adequate warnings or labeling regarding adverse side effects and health risks associated with the use of Invokana and the comparative severity of such adverse effects;

d.      failed to provide warnings, instructions or other information that accurately reflected the symptoms, scope, and severity of the side effects and health risks, including but not limited to those associated with the severity of Invokana's effect on renal function and propensity to cause ketoacidosis;

e.      failed to adequately warn users, consumers, and physicians about the need to monitor renal function in patients that do not already suffer from renal impairment; and;

f.      overwhelmed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, the risks associated with the use of Invokana.

136.    To this day, Defendants have failed to adequately and accurately warn of the true risks of injuries associated with the use of Invokana.

137.    Due to these deficiencies and inadequacies, Invokana was unreasonably dangerous and defective as advertised, sold, labeled, and marketed by Defendants, respectively.

138.    Had Defendants properly disclosed and disseminated the risks associated with Invokana, Plaintiff would have avoided the risk of developing the injuries alleged herein.

139.    Defendants are liable to Plaintiffs for injuries caused by their negligent or willful failure to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of Invokana and the risks associated.

140.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Plaintiff, Valerie Wilson, suffered acute kidney failure and other related health complications.

141.    In addition, as a result of the injuries caused by Defendants, Plaintiff requires and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur

medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include physician care, monitoring, and treatment. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

**WHEREFORE**, Plaintiff  respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT III
## STRICT PRODUCT LIABILITY – DESIGN DEFECT

142.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

143.    Defendants designed, developed, researched, tested, lisenced, manufactured, packaged, labeled, promoted, marketed, sold, and distributed Invokana in a defective and unreasonably dangerous condition, including Invokana used by Plaintiff.

144.    The design defect was caused by Defendants' failure to:

    a.    Adequately test Invokana;

    b.    Develop and provide a product label and marketing materials that accurately describes the risks of and does not overstate the benefits of using Invokana;

    c.    Provide full, complete, and accurate information to the FDA about Invokana;

> d.     Adequately test and study Invokana;
>
> e.     Ensure the benefits of Invokana outweigh the risks for people susceptible to diabetic ketoacidosis, kidney failure or other adverse effects;
>
> f.     Conduct adequate post-market surveillance; and
>
> g.     Use a safer alternative formulation.

145.    The design defect made Invokana more dangerous than an ordinary consumer would expect and more dangerous than other drugs used to treat diabetes.

146.    The design defect was such that the risks of Invokana outweighed its utility.

147.    The danger was unknowable to Plaintiff and would be considered unacceptable to the average consumer.

148.    There were practical and technically feasible alternative designs that would not have reduced the utility of Invokana and would not have cost substantially more to develop, including, but not limited to providing a better warning with Invokana, using an alternative diabetes treatment, or developing an SLGT1 inhibitor with a different safety profile.

149.    The label is part of the design of Invokana, and therefore the design can be changed. Specifically, the label could have included a contraindication for people whose ketones increase, which would have alerted doctors and patients that the drug Invokana is not suitable for that population because the risks outweigh the benefits.

150.    Defendants' defective design of Invokana was reckless, willful, wanton, fraudulent, malicious, and done with reckless disregard for the health and safety of users of Invokana. Defendants made conscious decision not to redesign, adequately warn, or inform the unsuspecting public. Defendants' reckless conduct warrants an award of punitive damages.

Defendants' conduct was motivated by greed and the intentional decision to value profits over the safety and well-being of the consumers of Invokana.

151.    Plaintiff was prescribed and used Invokana for its intended purposes and for purposes that Defendants expected and could foresee.

152.    Defendants expected and intended Invokana to reach, and it did in fact reach, Plaintiff without any substantial change in the condition of the product from when it was initially manufactured by Defendants

153.    Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further knew or should have known of the design defects.

154.    Plaintiff and Plaintiff's physicians did not have the same knowledge or expertise as Defendants and could not have discovered any defect in Invokana through the exercise of reasonable care.

155.    As a direct and proximate cause of Defendants' manufacture, sale, and promotion of the defectively designed drug, Plaintiff sustained permanent injuries.

156.    The defects of Invokana were substantial contributing factors in causing Plaintiff's injuries.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper, Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT IV
## NEGLIGENCE

157.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

158.    Defendants directly or indirectly caused Invokana to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Mrs. Wilson.

159.    The Defendants owed Mrs. Wilson and other consumers a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling Invokana, including the duty to take all reasonable steps necessary to ensure the product was not unreasonably dangerous to its consumers and users, and to warn Mrs. Wilson and other consumers of the dangers associated with Invokana.

160.    At all times material hereto, Defendants had actual knowledge, or in the alternative, should have known through the exercise of reasonable and prudent care, of the hazards and dangers of Invokana.

161.    Defendants had a duty to disclose to health care professionals the causal relationship or association of Invokana to the development of Mrs. Wilson's injuries.

162.    Defendants' duty of care owed to consumers, health care professionals, and patients included providing accurate information concerning: (1) the clinical safety and effectiveness profiles of Invokana, and (2) appropriate, complete, and accurate warnings concerning the  adverse effects of Invokana, including the injuries suffered by Mrs. Wilson.

163.    At the time of Mrs. Wilson's injuries, Defendants' Invokana was defective and unreasonably dangerous to foreseeable consumers, including Mrs. Wilson. During the time that Defendants designed, manufactured, packaged, labeled, promoted, distributed, and/or sold

Invokana, Defendants knew, or in the exercise of reasonable care should have known that their product was defective, dangerous, and otherwise harmful to Mrs. Wilson.

164.    Defendants knew or in the exercise of reasonable care should have known, that the use of Invokana could cause or be associated with Mrs. Wilson's's injuries and thus created a dangerous and unreasonable risk of injury to users of the products.

165.    Defendants knew that many heath care professionals were prescribing Invokana, and that many patients developed serious side effects including but not limited to diabetic ketoacidosis.

166.    Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, marketing, supplying, promotion, advertisement, packaging, sale, testing, quality assurance, quality control, and distribution of Invokana in interstate commerce, in that Defendants knew and had reason to know that consumer's use and ingestion of Invokana created a significant risk of suffering unreasonably dangerous health related side effects, including Mrs. Wilson's injuries, and failed to prevent or adequately warn of the severity of these risks and injuries.

167.    The Defendants were negligent in the advertising, warning, marketing, and sale of Invokana. Defendants failed to exercise due care under the circumstances, and their negligence includes the following acts and omissions:

        a.      Failing to properly and thoroughly test Invokana before releasing the drug to the market;

        b.      Failing to properly and thoroughly analyze the data resulting from the premarketing tests of Invokana;

        c.      Failing to conduct sufficient post-market testing and surveillance of Invokana;

d.      Designing, manufacturing, marketing, advertising, distributing, and selling Invokana to consumers, including Mrs. Wilson, without an adequate warning of the significant and dangerous risks of Invokana and without proper instructions to avoid foreseeable harm;

e.      Failing to accompany their product with proper or adequate warnings or labeling regarding adverse side effects and health risks associated with the use of Invokana and the comparative severity of such adverse effects;

f.      Failing to exercise due care when advertising and promoting Invokana; and

g.      Negligently continuing to manufacture, market, advertise, and distribute Invokana after the Defendants knew or should have known of its adverse effects.

168.    Defendants knew and/or should have known that it was foreseeable that consumers such as Mrs. Wilson would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Invokana.

169.    Mrs. Wilson did not know the nature and extent of the injuries that could result from ingestion and use of Invokana.

170.    Defendants' negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiffs suffered, and will continue to suffer, as described herein.

171.    Defendants' conduct, as described above, was reckless. Defendants' actions and inaction risked the lives of consumers and users of their products, including Mrs. Wilson.

172.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Mrs. Wilson suffered diabetic ketoacidosis and other related health complications. In addition, Mrs. Wilson requires and will continue to require healthcare and services.

173.    Mrs. Wilson has incurred and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Mrs. Wilson's direct medical losses and costs include physician care, monitoring, and treatment. Mrs. Wilson has incurred and will continue to incur mental and physical pain and suffering.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT V
## WILLFUL AND WANTON CONDUCT OR GROSS NEGLIGENCE

174.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

175.    The wrongs done by Defendants were aggravated by malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiffs, in that the defendants' conduct was specifically intended to cause substantial injury to Plaintiff. When viewed objectively from Defendants' standpoint at the time of the conduct, considering the probability and magnitude of the potential harm to others, the defendants' conduct involved an extreme degree of risk.

176.    Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with complete indifference to or a conscious disregard for to the rights, safety, or welfare of others. Moreover, Defendants made material representations that were false,

38

with actual knowledge of or reckless disregard for their falsity, with the intent that the representations be acted on by Plaintiff and Plaintiff's healthcare providers.

177.    Plaintiff relied on Defendants' representations and suffered injuries as a proximate result of this reliance.

178.    Plaintiffs therefore assert claims for exemplary damages.

179.    Plaintiffs also allege that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiff.

180.    Plaintiffs are entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, and malicious acts, omissions, and conduct, and the defendants' reckless disregard for the public safety and welfare. Defendants intentionally and fraudulently misrepresented facts and information to both the medical community and the general public, including the safety of Invokana. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with the ingestion of Invokana, and intentionally downplayed the type, nature, and extent of the adverse side effects of ingesting Invokana, despite their knowledge and awareness of these serious side effects and risks.

181.    Defendants had knowledge of, and were in possession of evidence demonstrating that Invokana caused serious side effects. Notwithstanding their knowledge, Defendants continued to market Invokana by providing false and misleading information with regard to their product's safety to regulatory agencies, the medical community, and consumers of Invokana.

182.    Although Defendants knew or recklessly disregarded the fact that Invokana cause debilitating and potentially lethal side effects, the Defendants continued to market, promote, and

distribute Invokana to consumers, including Plaintiff, without disclosing these side effects when there were safer alternative methods for treating diabetes.

183. Defendants failed to provide adequate warnings that would have dissuaded health care professionals from prescribing Invokana and consumers from purchasing and ingesting Invokana, thus depriving both from weighing the true risks against the benefits of prescribing, purchasing, or consuming Invokana.

184. Defendants knew of Invokana's defective nature as set forth herein, but continued to design, manufacture, market, distribute, sell, and/or promote the drugs to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in a conscious, reckless, or negligent disregard of the foreseeable harm caused by Invokana.

185. Defendants' acts, conduct, and omissions were willful and malicious. The Defendants committed these acts with knowing, conscious, and deliberate disregard for the rights, health, and safety of Plaintiff and other users of Invokana and for the primary purpose of increasing Defendants' profits from the sale by making intentionally false and fraudulent misrepresentations about distribution of Invokana. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against all defendants in an amount appropriate to punish and make an example out of each.

186. Prior to the manufacture, sale, and distribution of Invokana, Defendants knew that Invokana was in a defective condition and knew that thosewho were prescribed the medications would experience and did experience severe physical, mental, and emotional injuries. Further, each defendant, through their officers, directors, managers, and agents, knew that Invokana presented a substantial and unreasonable risk of harm to the public, including Plaintiff. As such, Defendants unreasonably subjected consumers of Invokana to risk of injury.

187.    Despite their knowledge, Defendants, acting through their officers, directors and managing agents, for the purpose of enhancing the Defendants' profits, knowingly and deliberately failed to remedy the known defects in Invokana and failed to adequately warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects. Defendants and their respective agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of Invokana knowing these actions would expose persons to serious danger in order to advance the defendants' pecuniary interest and monetary profits.

188.    Defendants' conduct was committed with willful and conscious disregard for the safety of Plaintiff, entitling Plaintiff to exemplary damages.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT VI
## NEGLIGENCE PER SE

189.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

190.    At all relevant times, Defendants had a duty to exercise reasonable care to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, sell, prescribe and adequately warn of the risks and dangers of Invokana, including a duty to assure that the product did not cause unreasonable, dangerous side-effects to users.

41

191.    Defendants had a duty to exercise due care and avoid unreasonable risk of harm to others when developing and selling Invokana.

192.    Defendants had a duty to disclose to physicians, healthcare providers, and patients the causal relationship or association of Invokana to diabetic ketoacidosis, kidney failure, cardiovascular problems and the life threatening complications of those conditions.

193.    Defendants had a duty to accurately communicate the risks and benefits of Invokana to physicians, healthcare provides, and patients.

194.    Defendants failed to exercise ordinary care and failed to comply with existing laws in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Invokana into interstate commerce in that Defendants knew or should have known that using Invokana created an unreasonable risk of dangerous injuries including diabetic ketoacidosis, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

195.    Defendants, their agents, servants, and/or employees, failed to exercise ordinary care and violated 21 U.S.C. § 331, 352; 42 U.S.C. § 1320a-7b, and 21 C.F.R. §§ 201.57, 201.128, in particular.

196.    The laws violated by Defendants were designed to protect Ms. Wilson and similarly situated persons against the risks and hazards that have actualized in this case. Therefore, Defendants' conduct constitutes negligence per se.

197.    Despite the fact that Defendants knew or should have known that Invokana significantly increased the risk of injuries, including diabetic ketoacidosis, Defendants continued

and continue to negligently and misleadingly market, manufacture, distribute, and/or sell Invokana to consumers, including Mrs. Wilson.

198.    At all times material hereto, Defendants had actual knowledge, or in the alternative, should have known through the exercise of reasonable and prudent care, of the hazards and dangers of Invokana to cause or increase the harm of diabetic ketoacidosis, kidney failure, cardiovascular problems, and the life threatening complications of those conditions.

199.    Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss, which Mrs. Wilson suffered and/or will continue to suffer.

200.    Had Mrs. Wilson not taken Invokana, she would not have suffered the injuries and damages as described herein.

201.    As a result of the foregoing acts and omissions, Mrs. Wilson was caused to suffer serious injuries, including diabetic ketoacidosis, and other injuries that are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications.

202.    As a result of the Defendants' aggressive marketing campaigns promoting off label uses, including for type 1 diabetes, weight loss, and to improve blood pressure and kidney function, Defendants knew or should have known and expected that consumers would use Invokana for such off-label uses.

203.    Defendants knew or should have known that some patients would develop serious injuries that were not adequately warned about, including diabetic ketoacidosis, kidney failure, and cardiovascular injury, and these injuries were foreseeable.

204.    Mrs. Wilson also has sustained severe emotional distress and suffering as a result Defendants' wrongful conduct.

205.    Mrs. Wilson did not know the nature and extent of the injuries that could result from Invokana and were misinformed about the benefits of Invokana and could not have discovered this information independently.

206.    At all times herein mentioned, Defendants breached their duty of care by failing to exercise reasonable and ordinary care and negligently and carelessly manufacturing, designing, formulating, distributing, compounding, producing, processing, assembling, inspecting, distributing, marketing, labeling, packaging, preparing for use, and selling Invokana, and failing to adequately test and warn of the risks and dangers of Invokana.

207.    Despite the fact that Defendants knew or should have known that Invokana caused unreasonable, dangerous side effects, Defendants continued to market Invokana to consumers including Mrs. Wilson, when there were safer alternative methods available.

208.    Defendants' negligence was a foreseeable and proximate cause of the Plaintiff's injuries, harm and economic loss which they suffered, and will continue to suffer, as described and prayed for herein.

209.    Defendants failed to exercise ordinary care in the sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of Invokana in that Defendants knew or should have known that the drug created a high risk of unreasonable harm.

210.    Defendants were negligent in the advertising, warning, marketing and sale of Invokana in that, among other things, they:

   a.    Failed to accompany the drug with proper warnings regarding all possible adverse side effects associated with its use, and the comparative severity and duration of such adverse effects. The warnings given did not accurately reflect the symptoms, scope or severity of the side effects;

      b.      Failed to provide adequate training and instruction to medical care providers for the appropriate use of Invokana;

      c.      Negligently failing to adequately and correctly warn Mrs. Wilson, the public, the medical and healthcare profession, and FDA of the dangers of Invokana;

      d.      Failed to accompany their product with accurate warnings regarding the risk of all possible adverse side effects concerning Invokana;

      e.      Failed to warn Mrs. Wilson and/or Mrs. Wilson's healthcare providers of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

      f.      Placed an unsafe product into the stream of commerce;

      g.      Over-promoted Invokana and marketed and advertised the drug in a manner that minimized the risks and damages of the drug; and,

      h.      Were otherwise careless or negligent.

211.    Despite the fact that Defendants knew or should have known that Invokana caused unreasonable, dangerous side-effects which many users would be unable to remedy, Defendants continued to market Invokana to consumers, including the medical community and Mrs. Wilson.

212.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Mrs. Wilson, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to re-label, warn, or inform the unsuspecting consuming public.

213.    Defendants knew or should have known that consumers such as Mrs. Wilson would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

214.    Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which Plaintiff suffered and/or will continue to suffer.

215.    Plaintiffs plead this Count in the broadest sense available under the law, to include pleading same pursuant to all substantive law that applies to this case, as may be determined by choice of law principles regardless of whether arising under statute and/or common law.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT VII
## FRAUDULENT MISREPRESENTATION

216.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

217.    Defendants made fraudulent misrepresentations with respect to Invokana in the following particulars:

Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that Invokana had been tested and found to be safe and effective for the treatment of diabetes; and

218.    Upon information and belief, Defendants represented that Invokana was safer than other alternative medications

219.   Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risk of Invokana to Mrs. Wilson, other consumers, Mrs. Wilson's physicians, and the medical community.

220.   The representations were made by the Defendants with the intent that doctors and patients, including Mrs. Wilson and Mrs.Wilson's physicians, rely upon them.

221.   Defendants' representations were made with the intent of defrauding and deceiving Mrs. Wilson, other consumers, Mrs. Wilson's physicians, and the medical community to induce and encourage the sale of Invokana.

222.   Mrs. Wilson, Mrs. Wilson's doctors, and others relied upon these representations.

223.   As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Mrs. Wilson suffered diabetic ketoacidosis and other related health complications. In addition, Mrs. Wilson requires and will continue to require healthcare and services.

224.   Mrs. Wilson has incurred and will continue to incur medical and related expenses. Mrs. Wilson also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Mrs. Wilson has incurred and will continue to incur mental and physical pain and suffering.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

225.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

226.    Defendants owed a duty in all of their undertakings, including the dissemination of information concerning Invokana, to exercise reasonable care to ensure they did not create unreasonable risks of personal injury to others.

227.    Defendants disseminated to health care professionals and consumers – through published labels, marketing materials, and otherwise – information that misrepresented the properties and effects of Invokana with the intention that health care professionals and consumers would rely upon that information in their decisions concerning whether to prescribe or ingest Invokana.

228.    Defendants, as the designers, manufacturers, sellers, promoters, and/or distributors of Invokana, knew or reasonably should have known that health care professionals and consumers of Invokana rely on information disseminated and marketed to them regarding the product when weighing the potential benefits and potential risks of prescribing or ingesting Invokana.

229.    Defendants failed to exercise reasonable care to ensure that the information they disseminated to health care professionals and consumers concerning the properties and effects of Invokana were accurate, complete, and not misleading. As a result, Defendants disseminated information to health care professionals and consumers that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to consumers such as Mrs. Wilson.

48

230.    Defendants, as designers, manufacturers, sellers, promoters, and/or distributors of Invokana, knew or reasonably should have known that health care professionals would write prescriptions for Invokana in reliance on the information disseminated by Defendants, and that the patients receiving prescriptions for Invokana would be placed in peril of developing serious and potential life threatening injuries if the information disseminated by Defendants and relied upon by health care professionals and consumers, including Mrs. Wilson, was materially inaccurate, misleading, or otherwise false.

231.    From the time Invokana was first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and distributed, and up to the present, Defendants failed to disclose material facts regarding the safety of Invokana. Defendants made material misrepresentations to Mrs. Wilson, Mrs. Wilson's health care professionals, the healthcare community, and the general public, including:

a.    Stating that Invokana had been tested and found to be safe and effective for the treatment of diabetes;

b.    Concealing, misrepresenting, and actively downplaying the severe and life threatening risks of harm to users of Invokana, when compared to comparable or superior alternative pharmaceutical therapies; and

c.    Misrepresenting Invokana's risk of unreasonable and dangerous, adverse side effects.

232.    Defendants made the foregoing representations without any reasonable ground for believing them to be true.

233.    These representations were made directly by Defendants, their sales representatives, and other authorized agents, and in publications and other written materials directed to health care professionals, medical patients, and the public.

234.    Defendants made these representations with the intent to induce reliance thereon, and to encourage prescription, purchase, and use of Invokana.

235.    Defendants had a duty to accurately and truthfully represent to medical professionals and consumers, including Mrs. Wilson, the truth regarding Defendants' claims that Invokana had been tested and found to be safe and effective for treating diabetes.

236.    The misrepresentations made by Defendants, in fact were false and known by Defendants to be false at the time the misrepresentations were made.

237.    Defendants failed to exercise ordinary care in making their representations concerning Invokana and in the manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce of Invokana.

238.    Defendants engaged in a nationwide marketing campaign, over-promoting Invokana in written marketing literature, in written product packaging, and in direct-to-consumer advertising via written and internet advertisements and television commercial ads. Defendants' over promotion was undertaken by touting the safety and efficacy of Invokana while concealing, misrepresenting, and actively downplaying the serious, severe, and life-threatening risks of harm to users of Invokana, when compared to comparable or superior alternative drug therapies. Defendants negligently misrepresented Invokana's risk of unreasonable and dangerous adverse side effects.

239.    Defendants' conduct, as described above, was reckless. Defendants risked the lives of consumers and users of Invokana, including Mrs. Wilson. Defendants had knowledge of the safety problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, adequately warn, or inform the unsuspecting public. Defendants' reckless conduct warrants an award of punitive damages.

240.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Mrs. Wilson suffered diabetic ketoacidosis and other related health complications. In addition, Mrs. Wilson requires and will continue to require healthcare and services.

241.    Mrs. Wilson has incurred and will continue to incur medical and related expenses. Mrs. Wilson also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Ms. Wilson has incurred and will continue to incur mental and physical pain and suffering.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also  demand that the issues contained herein be tried by a jury.

<u>COUNT IX</u>
<u>FRAUDULENT CONCEALMENT</u>

242.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

243.    Throughout the relevant time period, Defendants knew that Invokana was defective and unreasonably unsafe for its intended purpose, and intentionally and willfully failed to disclose and/or suppressed information regarding the true nature of the risks of use of Invokana.

244.    Defendants fraudulently concealed information with respect to Invokana in the following particulars:

      d.      Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submission that Invokana was safe and fraudulently withheld and concealed information about the severity of the substantial risks of using Invokana; and

      e.      Upon information and belief, Defendants represented that Invokana was safer than other alternative medications and fraudulently concealed information which demonstrated that Invokana was not safer than alternatives available on the market.

245.    Defendants were under a duty to Mrs. Wilson to disclose and warn of the defective and dangerous nature of Invokana because:

      f.      Defendants had sole access to material facts concerning, and unique and special expertise regarding, the dangers and unreasonable risks of Invokana;

      g.      Defendants knowingly made false claims and omitted important information about the safety and quality of Invokana in the documents and marketing materials Defendants provided to physicians and the general public; and

      h.      Defendants fraudulently and affirmatively concealed the defective and dangerous nature of Invokana from Mrs. Wilson.

246.    As the designers, manufacturers, sellers, promoters, and/or distributors of Invokana, Defendants had unique knowledge and special expertise regarding Invokana. This placed them in a position of superiority and influence over Mrs. Wilson and his healthcare providers. As such, Mrs. Wilson and Mrs. Wilson's health care providers reasonably placed their trust and confidence in Defendants and in the information disseminated by Defendants.

247.    The facts concealed or not disclosed by Defendants to Mrs. Wilson were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase or use Invokana.

248.    The concealment and/or non-disclosure of information by Defendants about the severity of the risks caused by Invokana was intentional, and the representations made by Defendants were known by them to be false.

249.    The concealment of information and the misrepresentations about Invokana were made by Defendants with the intent that doctors and patients, including Mrs. Wilson, rely upon them so that Mrs. Wilson would request and purchase Invokana and Mrs. Wilson's health care providers would prescribe and recommend Invokana.

250.    Mrs. Wilson and , Mrs. Wilson's doctors, and others reasonably relied on Defendants' representations and were unaware of the substantial risk posed by Invokana.

251.    Had Defendants not concealed or suppressed information regarding the severity of the risks of Invokana, Mrs. Wilson's physicians would not have prescribed, and Mrs. Wilson would not have ingested, the drug.

252.    Defendants, by concealment or other action, intentionally prevented Mrs. Wilson and his health care professionals from acquiring material information regarding the lack of safety of Invokana, thereby preventing Mrs. Wilson from discovering the truth. As such, Defendants are liable for fraudulent concealment.

253.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Mrs. Wilson suffered diabetic ketoacidosis and other related health complications. In addition, Mrs. Wilson requires and will continue to require healthcare and services.

254.    Mrs. Wilson has incurred and will continue to incur medical and related expenses. Mrs. Wilson also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Mrs. Wilson has incurred and will continue to incur mental and physical pain and suffering.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT X
## BREACH OF EXPRESS WARRANTY

255.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

256.    At all times material hereto, Defendants engaged in the business of testing, developing, designing, manufacturing, packaging, labeling, marketing, promoting, selling, and/or distributing Invokana, which is unreasonably dangerous and defective, thereby placing Invokana into the stream of commerce.

257.    Defendants expressly represented to Mrs. Wilson, other consumers, Mrs. Wilson's physicians, and the medical community, by and through statements made and written materials disseminated by Defendants or their authorized agents or sales representatives, that Invokana:

    a.    was safe and fit for its intended purposes;

    b.    was of merchantable quality;

    c.    did not produce any dangerous side effects; and

    d.    had been adequately tested and found to be safe and effective for the treatment of diabetes.

258.    These express representations include incomplete prescribing information that purports, but fails, to include the true risks associated with the use of Invokana. In fact,

Defendants knew or should have known that the risks identified in Invokana's prescribing information and package inserts do not accurately set forth the drug's true risks. Despite this, Defendants expressly warranted Invokana as safe and effective for use.

259.    Defendants advertised, labeled, marketed, and promoted Invokana, representing the quality to health care professionals, Mrs. Wilson, and the public in such a way as to induce Invokana's purchase or use, thereby making an express warranty that Invokana would conform to the representations. More specifically, the prescribing information for Invokana did not and does not contain adequate information about the true risks of developing the injuries complained of herein.

260.    Despite this, Defendants expressly represented that Invokana was safe and effective, that it was safe and effective for use by individuals such as Mrs. Wilson, and/or that it was safe and effective to treat diabetes. Portions of the prescribing information relied upon by Mrs. Wilson  and Mrs. Wilson's health care professionals, including the "Warnings and Precautions" section, purport to expressly include the risks associated with the use of Invokana, but those risks are neither accurate nor adequately set forth.

261.    The representations about Invokana contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

262.    Invokana does not conform to Defendants' express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries. Therefore, Defendants breached the aforementioned warranties.

263.    At all times relevant, Invokana did not perform as safely and as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.Neither Mrs. Wilson nor Mrs. Wilson 's prescribing health care professionals had knowledge of the falsity of incompleteness of the Defendants' statements and representations concerning Invokana.

264.    Mrs. Wilson, other consumers, Mrs. Wilson's physicians, and the medical community justifiably and detrimentally relied upon Defendants' express warranties when prescribing and ingesting Invokana.

265.    Had the prescribing information for Invokana accurately set forth the true risks associated with the use of such product, including Mrs. Wilson's injuries, rather than expressly excluding such information and warranting that the product was safe for its intended use, Mrs. Wilson could have avoided the injuries complained of herein.

266.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Mrs. Wilson suffered diabetic ketoacidosis and other related health complications. In addition, Mrs. Wilson requires and will continue to require healthcare and services.

267.    Mrs. Wilson has incurred and will continue to incur medical and related expenses. Mrs. Wilson also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Mrs. Wilson has incurred and will continue to incur mental and physical pain and suffering.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein

incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT XI
## BREACH OF IMPLIED WARRANTY

268.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

269.    Defendants manufactured, distributed, advertised, promoted, and sold Invokana.

270.    At all relevant times, Defendants knew of the use for which Invokana was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

271.    Defendants were aware that consumers, including Mrs. Wilson, would use Invokana for treatment of Type 2 Diabetes and for other purposes, including but not limited to weight loss, and reduced blood pressure.

272.    Invokana was neither safe for its intended use nor of merchantable quality, as impliedly warranted by Defendants, in that Invokana has dangerous propensities when used as intended and can cause serious injuries, including diabetic ketoacidosis, stroke, heart attack, and severe kidney damage.

273.   At all relevant times, Defendants intended that Invokana be used in the manner used by Mrs. Wilson, and Defendants impliedly warranted it to be of merchantable quality, safe, and fit for such use, despite the fact that Invokana was not adequately tested.

274.    Defendants were aware that consumers, including Mrs. Wilson, would use Invokana as marketed by Defendants. As such, Mrs. Wilson was a foreseeable user of Invokana.

275.    Upon information and belief, Mrs. Wilson's and/or Mrs. Wilson's health care professionals were at all relevant times in privity with Defendants.

276.    Invokana was dangerous and defective when Defendants placed it into the stream of commerce because of its propensity to cause Mrs. Wilson's injuries.

277.    Mrs. Wilson and the medical community reasonably relied upon the judgment and sensibility of Defendants to sell Invokana only if it was indeed of merchantable quality and safe and fit for its intended use.

278.    Defendants breached their implied warranty to consumers, including Mrs. Wilson. Invokana was not of merchantable quality, nor was it safe and fit for its intended use.

279.    Mrs. Wilson and Plaintiffs's physicians reasonably relied upon Defendants' implied warranty for Invokana when prescribing and ingesting Invokana.

280.    Mrs. Wilson's use of Invokana was as prescribed and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

281.    Invokana was expected to reach and did in fact reach consumers, including Mrs. Wilson

282.    Mrs. Wilson, without substantial change in the condition in which it was manufactured and sold by Defendants.

283.    Defendants breached the warranties of merchantability and fitness for its particular purpose because Invokana was unduly dangerous and caused undue injuries, including Mrs. Wilson's injuries.

284.    The harm caused by Invokana far outweighed its alleged benefit, rendering Invokana more dangerous than an ordinary consumer or health care professional would expect and more dangerous than alternative products.

285.    Neither Mrs. Wilson nor Mrs. Wilson's health care professionals reasonably could have discovered or known of the risk of serious injury and death associated with Invokana.

286.    Defendants' breach of these implied warranties caused Plaintiff's injuries.

287.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Mrs. Wilson suffered diabetic ketoacidosis and other related health complications. In addition, Mrs. Wilson requires and will continue to require healthcare and services.

288.    Mrs. Wilson has incurred and will continue to incur medical and related expenses. Mrs. Wilson also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Mrs. Wilson has incurred and will continue to incur mental and physical pain and suffering.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT XII
## FRAUD

289.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

290.    Defendants intentionally, willfully, and knowingly, fraudulently misrepresented to Mrs. Wilson, Mrs. Wilson's prescribing health care professionals, the health care industry and consumers that Invokana had been adequately tested in clinical trials and was found to be safe and effective as a diabetes treatment.

291.    Defendants knew or should have known at the time they made their fraudulent misrepresentations that their material misrepresentations and omissions were false regarding the dangers and risks of adverse health events associated with the use of Invokana. Defendants made their fraudulent misrepresentations willfully, wantonly, and with reckless disregard and depraved indifference for the safety and well-being of the users of Invokana, such as Mrs. Wilson.

292.    Defendants' fraudulent misrepresentations were made with the intent of defrauding and deceiving the health care industry and consumers, including Mrs. Wilson and her prescribing health care professionals, so as to induce them to recommend, prescribe, disperse, or purchase Invokana, despite the risk of severe life threatening injuries, which Defendants knew were caused by the product.

293.    The Defendants fraudulently and intentionally concealed material information, as aforesaid, Defendants knew that Invokana was defective and unreasonably unsafe for its intended purpose and intentionally failed to disclose information regarding the true nature of the product's risk.

294.    Defendants fraudulently and intentionally failed to disclose and warn of the severity of the injuries described herein, which were known by Defendants to result from use of Invokana.

295.    Defendants fraudulently and intentionally suppressed information about the severity of the risks of injuries associated with Invokana from physicians and patients, including Mrs. Wilson and his prescribing physicians, used sales and marketing documents that contained information contrary to Defendants' internally held knowledge regarding the aforesaid risks and injuries, and overstated the efficacy and safety of Invokana. For example:

    a.    Invokana was not as safe and effective as other diabetes drugs given its intended use;

      b.     Ingestion of Invokana does not result in a safe and more effective method of diabetes treatment than other available treatments;

      c.     The risks of harm associated with the use of Invokana was greater than the risks of harm associated with other forms of diabetes drug therapies;

      d.     The risk of adverse events with Invokana was not adequately tested and was known by Defendants, but Defendants knowingly failed to adequately test the product;

296.    Defendants knew that the risks of harm associated with the use of Invokana was greater than the risks of harm associated with other forms of diabetes drug therapies, yet knowingly made material misrepresentations and omissions of fact on which Mrs. Wilson relied when ingesting Invokana:

      a.     The limited clinical testing revealed that Invokana had an unreasonably high risk of injury, including Mrs. Wilson's injuries, above and beyond those associated with other diabetes drug therapies;

      b.     Defendants intentionally and knowingly failed to disclose and concealed the adverse events discovered in the clinical studies and trial results;

      c.     Defendants had knowledge of the dangers involved with the use of Invokana, which dangers were greater than those associated with other diabetes drug therapies; and

      d.     Defendants intentionally and knowingly failed to disclose that patients using Invokana could suffer diabetic ketoacidosis; and/or Invokana was defective, and caused dangerous and adverse side effects, including the specific injuries described herein.

297.    Defendants had access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who ingest Invokana, information that was not publicly disseminated or made available, but instead was actively suppressed by Defendants.

298.    Defendants' intentional concealment and omissions of material fact concerning the safety of Invokana was made with purposeful, willful, wanton, fraudulent, and reckless

disregard for the health and safety of Mrs. Wilson, and with reckless intent to mislead, so as to cause Mrs. Wilson's prescribing physicians to purchase, prescribe, and/or dispense Invokana, and to cause Mrs. Wilson to rely on Defendants' fraudulent misrepresentations that Invokana was a safe and effective diabetes drug therapy.

299.    At the time Mrs. Wilson purchased and used Invokana, Mrs. Wilson was unaware that Defendants had made misrepresentations and omissions, and instead Mrs. Wilson reasonably believed Defendants' representations to constitute a true, complete, and accurate portrayal of Invokana's safety and efficacy.

300.    Defendants knew and had reason to know that Invokana could and would cause serious personal injury to the users of the product, and that the product was inherently dangerous in a manner that exceeded any purported warnings given by Defendants.

301.    In reliance on Defendants' false and fraudulent misrepresentations, Mrs. Wilson was induced to use and in fact used Invokana, thereby sustaining injuries and damages. Defendants knew and had reason to know that Mrs. Wilsonand his health care professionals did not have the ability to determine the true facts intentionally concealed and suppressed by Defendants, and that Mrs. Wilson and his health care professionals would not have prescribed and ingested Invokana if the true facts regarding the drug had not been concealed by Defendants.

302.    During the marketing and promotion of Invokana to health care professionals, neither Defendants nor the co-promoters who were dealing Invokana on Defendants' behalf, warned health care professionals, including Mrs. Wilson's prescribing health care professional, that Invokana caused or increased the risk of harm of diabetic ketoacidosis.

303.   Mrs. Wilson reasonably relied upon Defendants' misrepresentations, where knowledge of the concealed facts was crucial to understanding the true dangers inherent in the use of Invokana.

304.   Defendants willfully, wrongfully, and intentionally distributed false information, assuring Mrs. Wilson, the public, Mrs. Wilson's health care professionals, and the health care industry that Invokana was safe for use as a means of diabetes treatment. Upon information and belief, Defendants intentionally omitted, concealed, and suppressed the true results of Defendants' clinical tests and research.

305.   Defendants' conduct was intentional and reckless. Defendants risked the lives of consumers and users of Invokana, including Mrs. Wilson. Defendants knew of Invokana's safety problems, and suppressed this knowledge from the general public. Defendants' intentional and reckless conduct warrants an award of punitive damages

306.   As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Mrs. Wilson suffered diabetic ketoacidosis and other related health complications. In addition, Mrs. Wilson requires and will continue to require healthcare and services.

307.   Mrs. Wilson has incurred and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Mrs. Wilson's direct medical losses and costs include physician care, monitoring and treatment. Mrs. Wilson has incurred and will continue to incur mental and physical pain and suffering.

**WHEREFORE**, Plaintiff respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein

incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper, Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT XIII
## VIOLATION OF BUSINESS & PROFESSIONS CODE §17200

308.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein

309.    Plaintiffs brings this cause of action pursuant to California Business & Professions Code § 17204.

310.    California Business & Professions Code § 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

311.    The acts and practices described above were and are likely to mislead members of the general public like the Plaintiff and therefore constitute unfair business practices within the meaning of California Business & Professions Code § 17200. The acts of untrue and misleading advertising set forth in the presiding paragraphs are incorporated by reference and are, by definition, violations of California Business & Professions Code § 17200. This conduct includes, but is not limited to:

    a.    Representing that INVOKANA was safe, fit, and effective for human consumption, knowing that said representations were false, and concealing that INVOKANA had a serious propensity to cause injuries to users;

    b.    Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that INVOKANA was safe for human consumption and will not interfere with daily life, even though the Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true;

      c.     Purposely downplaying and understating the health hazards and risks associated with INVOKANA;

      d.     Marketing and promoting JNVOKANA for an unapproved. or of label, use;

      e.     Issuing promotional literature and commercials deceiving potential users of INVOKANA by relaying positive infonnation, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the .knovm adverse and serious health effects and concealing material relevant information regarding the safety of INVOK.ANA.

312.    These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California Business & Professions Code § 17200, as well as unfair, deceptive, untrue and misleading advertising as prohibited by California Business & Professions Code § 17500.

313.    The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public like the Plaintiff in that Defendants continue to engage in the conduct described therein.

314.    As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and prescription of INVOKANA in California, sold in large part as a result of the acts and omissions described herein.208. Plaintiffs, pursuant to California Business & Professions Code § 17203, seek an order of this Court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT XIV
## VIOLATION OF BUSINESS & PROFESSIONS CODE §17500

315.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein

316.    Plaintiffs bring this cause of action pursuant to California Business & Professions Code § 17500.

317.    California Business & Professions Code§ 17500 provides that it is unlawful for any person. Firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

318.    At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California Business & Professions Code §17500 by engaging in the following acts and practices with intent to induce members of the public like the Plaintiff to purchase and use Invokana:

    a.    Representing that Invokana was safe, fit, and effective for human consumption, knowing that said representations were false, and concealing that Invokana had a serious propensity to cause injuries to users;

    b.    Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that Invokana was safe for human consumption and would not interfere with daily life, even though the Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true;

      c.      Purposely downplaying and understating the health hazards and risks associated with Invokana;

      d.      Marketing and promoting Invok.ana for an unapproved, or off label, use; and

      e.      Issuing promotional literature and·commercials deceiving potential users of Invokana by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant infonnation regarding the safety of Invokana.

319.    The foregoing practices constitute false and misleading advertising within the meaning of California Business & Professions Code § 17500.

320.    The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public like the Plaintiff in that the acts alleged herein are continuous and ongoing, and the public and Plaintiff will continue to suffer the harm alleged herein.

321.    As a result oftheir conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and prescription of Invokana in California, sold in large part as a result of the acts and omissions described herein.

322.    Pursuant to California Business & Professions Code§ 17535, Plaintiffs seek an order of this Court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

323.    Plaintiffs seek restitution of the monies collected by Defendants, and each of them, and other injunctive relief to cease such false and misleading advertising in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT XV
## LOSS OF CONSORTIUM

324.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

325.    At all relevant times, Plaintiff Matthew Wilson was and is the spouse of Plaintiff Valerie Wilson.

326.    As a result of the injuries sustained by Plaintiff, Valerie Wilson, as set forth above, Plaintiff, Matthew Wilson, have suffered loss of consortium, including but not limited to, mental anguish and the loss of his wife's support, services, society, companionship, comfort, affection, love, and solace.

327.    As a result of the injuries sustained by Plaintiff, Valerie Wilson, as set forth above, Plaintiffs have sustained damage to their marital relationship.


## PUNITIVE DAMAGES ALLEGATIONS

328.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

329.    The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint, were willful and malicious. Defendants committed these acts with a conscious disregard for the rights, health and safety of Plaintiff and other Invokana users and for the primary purpose of increasing Defendants' profits from the sale and distribution of Invokana. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

330.    Prior to the manufacturing, sale, and distribution of Invokana, Defendants knew that the drug was in a defective condition as previously described and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants, through their officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendants unreasonably subjected consumers of said drugs to risk of injury or death from using Invokana.

331.    Despite their knowledge, Defendants, acting through their officers, directors and managing agents, for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in Invokana and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in Invokana. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of Invokana knowing these actions would expose persons to serious danger in order to advance Defendants' pecuniary interest and monetary profits. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff and other consumers, entitling Plaintiff to exemplary damages.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment of the U.S. Constitution.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, and severally, as follows:

a.    For general damages in a sum in excess of the jurisdictional minimum of this Court;

b. For medical, incidental and hospital expenses according to proof in an amount to be determined at trial of this action;

c. Pain and suffering;

d. Non-economic damages for an increased risk of future complications as a direct result of Plaintiff's injury;

e. For pre-judgment and post-judgment interest as provided by law;

f. For consequential damages in excess of the jurisdictional minimum of this Court;

g. For compensatory damages in excess of the jurisdictional minimum of this Court including but not limited to non-economic damages in excess of $75,000.00;

h. For punitive damages in an amount in excess of any jurisdictional minimum of this Court in an amount sufficient to deter similar conduct in the future and punish the Defendants for the conduct described herein;

i. Prejudgment interest at the highest lawful rate allowed by law;

j. Interest on the judgment at the highest legal rate from the date of judgment until collected;

k. For attorneys' fees, expenses and costs of this action; and

l. For such further and other relief as this Court deems necessary, just and proper.

**DATED:** April 20, 2017.

       **RESPECTFULLY SUBMITTED,**

       /s/ *James D. Barger*
       James D. Barger
       (NJ Bar No. 03692-2010)
       **AYLSTOCK, WITKIN, KREIS &**
       **OVERHOLTZ PLLC**
       *Attorney for Plaintiffs*
       17 E. Main Street, Suite 200
       Pensacola, Florida 32502
       Phone: (850) 202-1010
       Facsimile: (850) 916-7449
       jbarger@awkolaw.com